**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ANGELA M. L., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 20-cv-00606-SH |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Angela M. L. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.      Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

2

Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II disability benefits on March 6, 2018, with a protective filing date of March 4, 2018. (R. 15, 160-73.) In her application, Plaintiff alleged she has been unable to work since October 6, 2017, due to conditions including right ankle issues, ankle replacement, right hip issues, arthritis, chronic pain, sleep disturbance, depression, anxiety, and attention deficit disorder ("ADD"). (R. 160, 167, 189.) Plaintiff was 47 years old at the time of the ALJ's decision. (R. 28, 160.) Plaintiff has a high school education and past relevant work as a Teacher Aide II. (R. 41-43, 52, 190.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 91-94, 97-103.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on November 21, 2019. (R. 34-55, 104-107.) The ALJ then issued a decision denying benefits and finding Plaintiff not disabled. (R. 15-28.) The Appeals Council denied review on September 22, 2020 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff timely filed this appeal on November 24, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through September 30, 2023. (R. 17.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 6, 2017.[2] (R. 18.) At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative joint disease to the right ankle and right hip; (2) peripheral neuropathy; (3) complex regional pain syndrome to the right lower limb; (4) obesity; (5) major depressive disorder; and (6) generalized anxiety disorder. (*Id.*) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 18-20.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a)" with the following limitations:

> [C]laimant is able to lift no more than ten pounds occasionally and less than ten pounds frequently. The claimant is able to sit for six hours in an eight-hour [work]day. The claimant is able to stand or walk for two hours in an eight-hour [work]day. The claimant is able to occasionally climb ramps or stairs. The claimant is able to occasionally balance, stoop, kneel, crouch, or crawl. The claimant is unable to climb ladders, ropes, or scaffolding. The claimant is capable of simple and some detailed tasks with a reasoning level of 4 and below.

(R. 20.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 20-26.) At step four, the ALJ found Plaintiff unable to perform her past relevant work as a Teacher Aide II. (R. 26.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed

---

[2] The ALJ noted that Plaintiff's records showed $3,261 in earnings for the fourth quarter of 2017 and $796 for the first quarter of 2018, but determined such earnings were not substantial gainful activity. (R. 18.)

4

in significant numbers in the national economy, such as Order Clerk, Document Preparer, or Pin-or-Clip Fastener. (R. 27-28.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 28.)

IV.  **Issues**

Plaintiff raises two allegations of error in her challenge to the denial of benefits: (1) the ALJ erred by ordering consultative examinations ("CEs") from non-treating medical sources without first recontacting Plaintiff's physicians as described in Social Security Ruling ("SSR") 03-2p, 2003 WL 22399117, at *4 (Oct. 20, 2003) (ECF No. 16 at 5-6);[3] and (2) the ALJ improperly found the CE conducted by Dr. Subramaniam Krishnamurthi partially persuasive while discounting the opinions of Dr. Jess Roy (*id.* at 6-8). Because Plaintiff's arguments do not articulate errors requiring reversal, the ALJ's decision is affirmed.

V.  **Analysis**

   A.  **ALJ's Decision to Order Additional CEs**

First, Plaintiff argues that the ALJ's choice to order CEs was both "unnecessary[,] due to [the] overwhelming medical evidence," and "prohibited by the language of the applicable SSR . . . ." (*Id.* at 5.) The Commissioner counters that the ALJ had before him "the complete longitudinal records" and "[t]herefore, there were no additional relevant records for the ALJ to obtain from Plaintiff's treatment providers" by recontacting them. (ECF No. 21 at 8.)

---

[3] Plaintiff also cites Program Operations Manual System ("POMS") DI 24580.025 in this argument. The text of SSR 03-2p and POMS DI 24580.025 are identical in all relevant parts, and the Court will reference only the Ruling in the remainder of its opinion unless further clarification is necessary. *Compare* SSR 03-2p, at *4 *with* POMS DI 24580.025 (B), https://secure.ssa.gov/poms.nsf/lnx/0424580025 (last visited Mar. 21, 2022).

### 1. Sufficiency of the Medical Records.

The Court can easily dispose of Plaintiff's contention that "the extent and quality of her medical records made the subsequent consultative examinations unnecessary." (ECF No. 16 at 6.) SSR 03-2p—the same Ruling on which Plaintiff relies—states that whether the issue is recontacting the medical source or purchasing a consultative examination, the starting point is the same: a finding by <u>the adjudicator</u> that the evidence is inadequate to determine whether the individual is disabled. SSR 03-2p, at *4. Thus, the operative question is not whether Plaintiff agrees with such a determination, but whether the ALJ, as the finder of fact, has initially determined that the evidence is inadequate to make a disability determination in accordance with the applicable regulations and Rulings.[4] As the ALJ considered the longitudinal record in great detail (R. 20-26) and determined that "additional development was needed" (R. 15), this question goes directly to how the ALJ has weighed the evidence. The Court will not reweigh evidence or substitute its judgment for that of the Commissioner. *Bowman*, 511 F.3d at 1272. As such, the Court rejects Plaintiff's argument that the ALJ should have weighed the evidence differently and determined that the existing medical record was sufficient.

### 2. ALJ's Duty to Recontact Treating Medical Sources.

Next, Plaintiff argues that even "assuming additional information was required . . . SSR 03-2p . . . require[s] the ALJ to 'first contact the individual's treating or other medical source(s) to determine whether additional information is readily available in

---

[4] This is in consistent with the caselaw governing CEs. *See, e.g.*, *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) ("[T]he Secretary has broad latitude in ordering consultative examinations.").

accordance with 20 CFR 404.1512 . . . .'" (ECF No. 16 at 6 (citing SSR 03-2p).) Plaintiff maintains that "[c]learly . . . this procedure was not followed before consultative examinations were arranged" in this case. (*Id.*) The Court, however, is dubious that the Ruling creates such a rigid requirement regarding recontacting Plaintiff's treating physicians, given that it merely points the adjudicator to his obligations under the applicable regulations (which no longer contain such a bright-line requirement). *Compare* SSR 03-2p *with* 20 C.F.R. § 404.1512(b)(2). Moreover, even were the ALJ obligated to recontact Plaintiff's medical sources before ordering a CE (and even if the ALJ had not done so here),[5] the Court finds the error harmless.

Generally, SSR 03-2p provides guidance regarding "evaluating cases involving . . . complex regional pain syndrome."[6] SSR 03-2p, at *1. Complex regional pain syndrome "is a chronic pain syndrome most often resulting from trauma to a single extremity." *Id.* As a part of the guidance to ALJs on how to evaluate this syndrome, the Social Security Administration ("Administration") discusses the procedure to go about obtaining further evidence when an ALJ feels the record is inadequate. *Id.* at *4. Specifically, the Administration clarifies that

> If the adjudicator finds that the evidence is inadequate to determine whether the individual is disabled, he or she must first recontact the individual's treating or other medical source(s) to determine whether the additional information needed is readily available, in accordance with 20

---

[5] The Court notes that Plaintiff has presented no evidence to demonstrate that the ALJ failed to recontact Plaintiff's physicians in accordance with SSR 03-2p. (ECF No. 16 at 5-6). However, it also recognizes that if evidence of an ALJ's act of decision is not contained in the administrative record, there is no feasible way for Plaintiff to obtain such evidence. As such, because this act was not documented in his decision (R. 15-28), at hearing (R. 36-54), or in the record, for purposes of Plaintiff's argument on appeal the Court will assume no such contact was made.

[6] At step two, the ALJ found Plaintiff's complex regional pain syndrome in her right lower limb to be one of numerous severe impairments. (R. 18.)

> CFR 404.1512 and 416.912.  Only after the adjudicator determines that the information is not readily available from the individual's health care provider(s), or that the necessary information or clarification cannot be sought from the individual's health care provider(s), should the adjudicator proceed to arrange for a consultative examination(s) in accordance with 20 CFR 404.1519a and 416.919a.

*Id.*  Importantly, the Ruling notes that the requirement to recontact a treating physician operates "in accordance with 20 CFR 404.1512" and that the procedure for ordering a CE operates "in accordance with 20 CFR 404.1519a . . . ." *Id.*

SSR 03-2p was promulgated in October 2003, and, until 2012, its language nearly mirrored that of 20 C.F.R. § 404.1512(e).  *See* 20 C.F.R. § 404.1512(e) (2003) ("When the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled . . . (1) We will first recontact your treating physician . . . to determine whether the additional information we need is readily available.").  However, in February 2012, the Administration announced it was "modifying the requirement to recontact [a claimant's] medical source(s) first when [the ALJ] need[s] to resolve an inconsistency or insufficiency in the evidence . . . provided."  How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,651 (Feb. 23, 2012).  Though the ALJ's "initial obligation to obtain medical evidence" remained unchanged, *id.* at 10,652, the regulation no longer <u>required</u> the ALJ to recontact the medical source in each instance where he viewed evidence as inconsistent or insufficient, 20 C.F.R. § 404.1512(b)(1)-(2) (noting the ALJ will make "every reasonable effort to help [a claimant] get medical evidence from [their] own medical sources" and that, generally, CEs will not be requested until the ALJ has made "every reasonable effort to obtain evidence from [the claimant's] own medical sources.").

The regulation does not, however, after the 2012 amendment, obligate the ALJ to recontact a claimant's treating physician. *Id.* The Administration found such a requirement "simply too rigid at a time when our adjudicators need more flexibility in developing evidence as quickly and efficiently as possible." 77 Fed. Reg. at 10,653. This tracks with how regulations and caselaw have generally treated an ALJ's consideration of evidence and the determination of whether to order a CE. *See, e.g.*, 20 C.F.R. § 404.1519a(a);[7] *id*. § 404.1520b(b);[8] *Hawkins*, 113 F.3d at 1166. Consequently, under the current version of 20 C.F.R. § 404.1512—which SSR 03-2p operates "in accordance with"—no requirement to recontact a treating physician exists. The ALJ merely has a general responsibility to "make every reasonable effort to help" the claimant obtain medical evidence, and generally no CEs will be ordered until "every reasonable effort to obtain evidence from" plaintiff's "own medical sources" has been made. 20 C.F.R. § 404.1512(b)(1)-(2).

Nonetheless, Plaintiff does not argue the ALJ failed to make a reasonable effort under the current regulation. Instead, Plaintiff attempts to overread a Ruling from 2003 to graft a requirement into the regulations that the Administration intentionally and

---

[7] "If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination. *See* § 404.1512 for the procedures we will follow to obtain evidence from your medical sources and § 404.1520b for how we consider evidence. Before purchasing a consultative examination, we will consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file." *Id.*

[8] "In some situations, we may not be able to make our . . . decision because the evidence in your case record is insufficient . . . ." *Id.* If the evidence is insufficient or the ALJ cannot reach a conclusion, the ALJ <u>may</u>, but is not obligated to, recontact a plaintiff's medical source. *Id.* § 404.1520b(b)(2)(i).

explicitly amended to remove.[9] To read the 2003 Ruling as Plaintiff asks would overstep the Court's role.[10]

However, even assuming Plaintiff is correct in her argument that SSR 03-02p required the ALJ to recontact Plaintiff's treating medical sources before ordering CEs, his failure to do so in this case was harmless. Any potential error was technical and so minor that it does not undermine this Court's confidence in the ALJ's decision. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The ALJ held the record open for further evidence from Plaintiff's treating physicians (R. 15, 37-39); provided Plaintiff the opportunity to respond to the CEs through requests for further evidence or hearings, with no response (R. 15, 254-55); and had before him a record Plaintiff argues contained "overwhelming medical evidence" (ECF No. 16 at 5). Consequently, as the Court also would not be required to "supply a missing dispositive finding," it finds any error in the ALJ's decision to order CEs harmless.

---

[9] SSR 03-02p was also drafted to comply with the since-abrogated "treating physician rule." *See* SSR 03-2p, at *5 ("Clarification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources" as "[m]edical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to deference and may be entitled to controlling weight.").

[10] The Court gives "substantial deference to an agency's interpretation of its own regulations," unless the agency's interpretation is plainly erroneous or inconsistent with the regulation. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). However, the Court sees no inconsistency here, where the prior Ruling merely directed the adjudicators to comply with the regulation—albeit using the wording from the then-current version of that regulation. (The Court notes here that POMS DI 24580.025—which restates the language requiring that an ALJ recontact a plaintiff's treating medical sources—is most recently effective as of June 18, 2019. *See* POMS DI 24580.025.) As such, the Court is loath to create an inconsistency just to overrule it when the Ruling can be read in a way that harmonizes it with the regulation.

### B.   Consideration of Drs. Krishnamurthi and Roy's Medical Opinions

Second, Plaintiff argues that the ALJ erred by "discount[ing] medical opinions from Claimant's longtime treating primary physician" (*id.* at 6 (citing Dr. Jess Roy's *Medical Source Statement* at R. 611-18)) and instead finding persuasive the "opinion of consultative examiner Dr. [Krishnamurthi] . . . ." (*id.* at 7-8) (maintaining that "the findings and opinions of Dr. [Krishnamurthi] should be found unpersuasive and excluded from consideration")). The Commissioner, however, contends that the ALJ adequately considered both opinions under 20 C.F.R. § 404.1520c. (ECF No. 21 at 5-7, 9-10.) The undersigned agrees with the Commissioner.

When considering an individual's claim of disability, the ALJ does not give any specific evidentiary weight to medical opinions.[11] 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions by considering the following factors: (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(c).

While the ALJ considers all five factors, he generally must discuss only two—supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability refers to information internal to the medical source offering the opinion: "The more relevant the objective evidence and supporting explanations presented by a medical source are to

---

[11] A medical opinion "is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) . . . ." 20 C.F.R. § 404.1513(a)(2).

support his . . . medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Consistency, meanwhile, is external: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. *Id.* § 404.1520c(b)(2).

1. **Dr. Jess Roy.**

Plaintiff argues the ALJ's analysis under 20 C.F.R. § 404.1520c was in error regarding Dr. Roy because Dr. Roy's opinions as to Plaintiff's inability to "sustain[] SGA level work due to her . . . complex pain syndrome" were supported by the administrative record as a whole. (ECF No. 16 at 6-7.) The Court finds no such error.

While the ALJ discussed a number of opinions given by Dr. Roy (R. 25), Plaintiff focuses on the *Medical Source Statement* Dr. Roy completed on November 5, 2019 (ECF No. 16 at 6-7 (citing R. 611-19)). Therein, as the ALJ noted, Dr. Roy provided opinions regarding Plaintiff's functional limitations, including her ability to lift/carry, sit/stand, and walk with an assistive device. (*See* R. 611-18.) Dr. Roy also opined regarding Plaintiff's postural, manipulative, environmental, and activity limitations. (*Id.*)

Despite Plaintiff's contention, the ALJ considered Dr. Roy's opinions at length in his decision and relied on an adequate analysis to find them unpersuasive. (R. 25.) Though Plaintiff no doubt would have weighed the evidence differently, the ALJ found Dr. Roy's opinions unsupported by his own examination records (*id.* (citing, as an example, R. 383-87 where Plaintiff's right ankle was stable, she had full range of motion,

normal movement of all extremities, and a normal gait))[12] and inconsistent with other evidence in the record, such as the examination of Dr. Krishnamurthi (*id.* (noting that in Dr. Krishnamurthi's physical examination of Plaintiff, she did not have to use a walker or a cane, had normal speed, was able to sit without difficulty, had normal strength, and had a normal sensation to pain and temperature)).[13]  Pursuant to 20 C.F.R. § 404.1520c, this was all the ALJ had to do.  His consideration of Dr. Roy's opinions was appropriate.

### 2.  Dr. Subramaniam Krishnamurthi.

In tandem with her argument regarding Dr. Roy, Plaintiff also contends that the ALJ improperly found Dr. Krishnamurthi's opinion partially persuasive.  (ECF No. 16 at 6-8.)  Plaintiff maintains that, because Dr. Krishnamurthi's opinions are allegedly "inconsistent with a treating medical source that saw Claimant 31 times," the ALJ should have weighed them differently.  (*Id.*)  As with his consideration of Dr. Roy's opinions, however, the ALJ adequately followed the precepts of 20 C.F.R. § 404.1520c.

After conducting a physical evaluation, Dr. Krishnamurthi filled out a *Medical Source Statement* and a *Range of Joint Motion Evaluation Chart*.  (R. 595-608.)  In his examination, Dr. Krishnamurthi determined Plaintiff was able to walk without an assistive device, had ankle pain but an otherwise stable gait and normal walking speed,

---

[12] This examination is consistent with many of Plaintiff's examinations with Dr. Roy. (*See, e.g.*, R. 357, 361, 368, 371, 375, 379, 390, 394, 401, 404, 408, 412, 416, 424, 428, 506, 530, 536, 540, 544, 548, 552, 560, 563.)

[13] Though this goes to the supportability of his findings, Dr. Roy's opinions were also internally inconsistent.  For instance, Dr. Roy opined that Plaintiff could both sit and stand for up to 60 minutes at a time without interruption.  (R. 614.)  Yet, he also opined that Plaintiff could only sit for 15 minutes and stand for 30 minutes <u>total in an eight-hour workday</u>.  (*Id.*)  Dr. Roy's opinion also appeared to have some first-person statements from Plaintiff written on them ("I worked with Special Ed."), perhaps indicating that portions of the document reflected Plaintiff's own subjective complaints, rather than Dr. Roy's medical opinions.  (*Id.*)

and retained a limited range of motion in her right ankle. (R. 597.) Dr. Krishnamurthi then opined regarding Plaintiff's functional limitations, including her ability to lift/carry, sit/stand, and walk (R. 598-603); her postural, manipulative, environmental, and activity limitations (*id.*); and her joint range of motion and accompanying pain (R. 605-08). After reviewing relevant portions of Dr. Krishnamurthi's opinions—such as his finding that Plaintiff could lift/carry at a light exertion level but could only stand and walk for one hour in an eight-hour workday—the ALJ considered the supportability and consistency of these opinions in accordance with 20 C.F.R. § 404.1520c(b)(2). (R. 25.) He held they were supported by the physical examination Dr. Krishnamurthi conducted as a part of the exam and were consistent with record evidence, such as the EMG and nerve conduction study completed on January 22, 2020. (*Id.*) Again, such an analysis was sufficient under 20 C.F.R. § 404.1520c.

The fact that these opinions may be different from those of Dr. Roy does not render the evaluation in error. The ALJ properly reviewed Dr. Roy's opinions and determined them to be inconsistent with his own examination records and with other record evidence. (*Id.*) Moreover, though Dr. Krishnamurthi's opinions were not mirror images of Dr. Roy's, they were substantially in line with Dr. Roy's extensive treatment records. *Compare* (R. 598-603) *with supra.* n.12. As such, Plaintiff's claim that these opinions were "inconsistent with a treating medical source that saw Claimant 31 times" is not completely accurate—at least when held up against Dr. Roy's exams.

The Court finds the ALJ did not err in his evaluation of the medical opinions.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 22nd day of March, 2022.

*[signature]*

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**